## Lock v. City of Middlesboro.

(Decided Jan. 19, 1937.)

ROBERT J. WATSON and L. R. WILSON for appellant.

R. L. MADDOX and ALFRED HOLMAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

This is an action by the City of Middlesboro against

a taxpayer of the city under the Declaratory Judgment Act (Civ. Code Prac. sec. 639a—1 et seq.) seeking to obtain approval of a proposed bond issue of $40,000 to fund a floating indebtedness of the city. The court granted the relief sought and the taxpayer is appealing.

It is alleged in effect in the petition that the floating indebtedness which the city proposes to pay with the proceeds of the bond issue accumulated over a period of 5 years (1931 to 1936 inclusive), and that all such indebtedness was incurred for necessary governmental purposes, etc.; that at no time during the period mentioned in the petition did the indebtedness of the city, including outstanding bonds, exceed in the aggregate the amount of indebtedness that might be incurred by the municipality under the provisions of section 158 of the Constitution; that the floating indebtedness arose out of a failure to collect anticipated revenue and a failure to levy the maximum rate permitted by law; that if the maximum rate had been levied and there had been no failure of revenue due to delinquencies, etc., the additional revenues that would have been collected in the course of the five years would have been in excess of the floating indebtedness proposed to be funded. The taxpayer who was made a party to the suit and the taxpayer who intervened controverted the allegations of the petition.

The evidence introduced by appellee clearly tends to establish that the indebtedness of the city during all of the time mentioned in the pleadings was well within the limit of the maximum indebtedness that might be incurred under section 158 of the Constitution. A list of the debts proposed to be paid by the proceeds of the bond issue is set forth in a schedule filed as an exhibit with the petition. It is not disclosed by the pleadings when any of this indebtedness was incurred, nor is it established by proof, in fact, the city clerk and tax collector testified that some of the indebtedness started in 1926 and his evidence further discloses that in 1929 there was a bond issue of $60,000 to fund floating indebtedness of the city. In this connection it may be further noted that the evidence discloses that there has been no provision for the creation of a sinking fund to retire this $60,000 indebtedness.

The evidence for the city is vague, indefinite, and uncertain, and so far as the record discloses, all of this

indebtedness may have been incurred in one year, and, if it was, then when considered in connection with other indebtedness it clearly exceeded the revenues that were collected or that might have been collected for any of the years referred to in the petition. Not only so, but the evidence discloses beyond question that there is other outstanding indebtedness against the city not mentioned in the pleadings which was incurred during the five-year period referred to in the petition. For example, it is shown that the city has executed notes to the Kentucky Utilities Company in sums aggregating over $13,000; that it owes something over $800 as rent for a municipal airport. The Kentucky Utilities Company has a claim against the city for approximately $25,000 which the city is contesting; however, it is quite apparent that it owes this company a considerable sum in addition to the outstanding notes. It owes Mr. Bryant, an attorney who has been representing it in considerable litigation an account of $1,500. The evidence also discloses that the city employed Mr. Pelham Johnston, an attorney at Lexington, to assist local attorneys in some litigation and that he presented a bill for $500 which the city refused to pay; but at least it owes something on this account. One Mr. Dooley who made an audit of the city's accounts testified that the city owed the school board over $23,000 which according to the city clerk is in dispute, but he at least tacitly admits that a considerable sum is due on this account. For some time there has been an effort on the part of the city to acquire a municipal light plant to cost something over $200,000. One Husselman, a consulting engineer or architect, has been employed under contract to receive 4 per cent. of this amount if the plant is constructed, and if not, he is to be paid on a quantum meruit basis. The record discloses that there is other outstanding indebtedness of the city not shown by the exhibits filed with the petition, some of which possibly is in dispute.

Under sections 186c-6 and 186c-7, Kentucky Statutes, the burden is upon a municipality to establish the validity of indebtedness proposed to be funded and that it was not incurred in violation of sections 157 and 158 of the Constitution. See Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961; Fox v. Boyle County, 245 Ky. 27, 53 S. W. (2d) 192, and cases cited in those opinions. These and other cases cited under the sections of

the statutes, supra, will disclose the character of proof necessary to authorize a bond issue of this character. The evidence signally fails to meet the burden of showing that any of the indebtedness did not exceed the income and revenue provided for the year in which it was incurred and therefore was not in violation of the provisions of section 157 of the Constitution. On a return of the case, there may be a reformation of pleadings and the city if it desires may take further proof to establish the validity of its floating indebtedness.

Wherefore the judgment is reversed for proceedings consistent with this opinion.